# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN STEWART, Individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>PLUG POWER INC., ANDREW MARSH, PAUL B. MIDDLETON, DAVID MINDNICH, and MARTIN D. HULL,<br><br>  Defendants. | Case No. 1:23-cv-704 (TJM/CFH)<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><u>JURY TRIAL DEMANDED</u><br><br><u>CLASS ACTION</u> |

Plaintiff John Stewart ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Plug Power Inc. ("Plug" or the "Company"), analysts' reports and advisories about the Company, and other information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly

1

traded common stock of the Company between August 9, 2022 and March 1, 2023, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this judicial district so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5. Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and subsequent damages took place within this judicial district. The Company's principal executive offices are located in this judicial district at 968 Albany Shaker Road, Latham, New York 12110.

6. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

7. Plaintiff, as set forth in the accompanying Certification, incorporated by reference herein, purchased Plug common stock at artificially inflated price during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

8. Defendant Plug purports to develop hydrogen fuel cell power systems for use in electric vehicles, stationary power units, and other purposes. Among the Company's products are hydrogen electrolyzers, which use electricity to split water into hydrogen and oxygen so the hydrogen can be stored for later use.

9. Defendant Plug is a Delaware corporation with principal executive offices at 968 Albany Shaker Road, Latham, New York, 12110. Plug's common stock trades on the NASDAQ under the ticker symbol "PLUG."

10. Defendant Andrew Marsh ("Marsh") was at all relevant times the Company's Chief Executive Officer ("CEO").

11. Defendant Paul B. Middleton ("Middleton") was at all relevant times the Company's Chief Financial Officer ("CFO").

12. Defendant David Mindnich ("Mindnich") was at all relevant times the Company's Executive Vice President of Global Manufacturing.

13. Defendant Martin D. Hull ("Hull") was at all relevant times the Company's Controller and Chief Accounting Officer.

14. Defendants Marsh, Middleton, Mindnich, and Hull are collectively referred to herein as the "Individual Defendants."

15. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

16. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all the wrongful acts complained of herein were carried out within the scope of their employment.

17. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

18. Plug and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

19. On August 9, 2022, in a letter to shareholders, Defendants touted Plug's "Strong Business Outlook" and assured investors that the Company's "[g]rowth outlook remains robust with over $15 billion sales funnel."

20. Defendants explained that the Company's backlog for electrolyzers was "already ahead of our targeted booking and backlog … for the year," highlighting several recent large orders, and represented that the Company "expect[s] to land two pedestal customers in Europe this year." Additionally, Defendants noted that the Company was "focused on building world class manufacturing and supply chain capabilities," and reaffirmed the Company's 2022 revenue guidance of between $900 million and $925 million, representing growth of approximately 80% year over year.

21. During the Company's quarterly earnings conference call the same day, Defendants further assured investors that the Company had a reliable supply chain that would support substantial growth. For example, in response to an analyst's question about the Company's "supply chain and … preparedness to really respond to how big this could get and how fast you guys want to move," Defendant Marsh explained: "supply chain and …preparedness to really respond to how big this could get and how fast you guys want to move," Defendant Marsh explained:

> I would kind of first take a step back and say there's actually 3 ingredients to that supply chain. One actually has to do with design. And when I think about our PEM electrolyzer design, we envision that sooner rather than later, a staff today will actually have about double the power, which actually simplifies, really, our supply chain. So a lot of that happens with can you design the product simpler. And that's continuing to go through our business.
>
> Probably the more important one is, are we adding the right people. ***And I think the reasons that we don't—not foresee supply issues this year is because the leadership we've put in place***. As you know, I've hired Dave Mindnich [from] Tesla who drove their Reno facility to make sure Tesla vehicles could be delivered. That same sort of mentality about how to develop those strategic relationships with suppliers, we've been working on for a long time.

> And third, look, a lot about this whole integrated supply chain is your own manufacturing capability. And the facility we built in Rochester, the facility we've built in Vista, which now we can occupy, I think, dramatically changes everything. ***So we have sophisticated people who have been driving our supply chain for the past years. We have designs, which we're looking to reduce the number of parts, which help us with cost and supply chain. And third, we have the facilities.***
>
> And look, our goal is to continue to have that leadership position. I don't want to downplay that—and I'm not trying on this call, [to] downplay that we don't fight supply chain issues every day. We do. But that is—the first item I get in the morning is what's going on and do they need me to make a call. So it is an everyday effort and it is more complicated. ***But I would say that it's less intense than it was.***
>
> (Emphasis added.)

22. Defendant Marsh further assured investors that the Company was "adding new customers that can help mitigate any slowdown" that was occurring in the global economy, and stated that he had "not seen are duction" in demand for Plug's products and services.

23. Similarly, Defendant Middleton emphasized that the Company's margins would improve in the second half of 2022 because the Company was "moving quickly to ramp the electrolyzer sales going from kind of scaling the plant [in the] first half to max production in the short term," as well as "the mix of sales and the growth that we're experiencing."

24. During the conference call, another analyst observed that the Company's inventory had increased dramatically—with the Company reporting nearly $430 million in inventory as of June 30, 2022, up from $269 million in inventory just six months earlier—and asked whether the increase was due to "planned inventory buildup" or "some delay in sales." In response, Defendant Middleton assured investors:

> ***It's really anticipation for the second half [of the year].*** I mean, if you look at the sales as we've seen historically, we do about 1/3 in the first half, and we do 2/3 in the second half. It's going to be—

> we're going to do more sales in the second half than we did almost—well, all of last year. So it's a big push. We're ramping up new facilities and production to support that as well as what we anticipate after in the first part of next year.
>
> ***So that's—I don't see that build continuing on in the second half. I think it will temper, we know it will temper, but it's really driven towards all that growth that we're building for to deliver in the second half.***
>
> (Emphasis added.)

25. The statements referenced in ¶¶19-24 above were materially false and misleading, and failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that the Company was unable to effectively manage its supply chain and product manufacturing, resulting in reduced revenues and margins, increased inventory levels, and several large deals being delayed until at least 2023, among other issues. As a result, Defendants' statements about the Company's business, operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

## The Truth Begins to Emerge

26. On October 14, 2022, Defendants announced that the Company's "prior full year 2022 revenue guidance of $900-925M could be 5%-10% lower for the year" and attributed this revised guidance to "some larger projects potentially being completed in 2023 instead of 2022 due to timing and broader supply chain issues."

27. On this news, the price of Plug common stock declined $1.20 per share, or more than 6%, from a close of $19.23 per share on October 13, 2022, to close at $18.03 per share on October 14, 2022.

28. While some information about the Company's true condition began to surface, Defendants continued to mislead the market. For example, during a Company symposium on October 19, 2022, Defendants assured investors that this revised guidance still represented substantial growth, with Defendant Middleton explaining that "even at the lower end of what we shared, we would still achieve 60% growth year-over-year."

29. Defendants also emphasized that the Company was already resolving its supply chain issues, with Defendant Mindnich stating that "we're taking the right steps right now, and we're going to continue to stay ahead of it," and assuring investors that "[o]ur supply chain team and our leader in supply chain is world-class."

30. The above statements identified in ¶¶ 28-29 were materially false and misleading, and failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that the Company was unable to effectively manage its supply chain and product manufacturing, resulting in reduced revenues and margins, increased inventory levels, and several large deals being delayed until at least 2023, among other issues. As a result, Defendants' statements about the Company's business, operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

31. Additional corrective events surfaced. Specifically, on November 8, 2022, the Company reported its financial results for the third quarter of 2022, revealing that—contrary to Defendants' prior claims of substantial growth in the second half of 2022—the Company's gross margins had decreased 3% sequentially, and 2% on a year-over-year basis, and that Plug's inventory levels had further increased to $516 million.

32. In response to the Company's declining margins and growing inventory levels, the price of Plug common stock declined $0.20 per share, or more than 1%, from a close of $14.81 per share on November 8, 2022, to close at $14.61 per share on November 9, 2022.

33. The partial corrective events did not dissuade Defendants from minimizing the risks facing Plug. During Plug's earnings conference call on November 8, 2022, when an analyst expressed concern about the Company's decreasing margins and increasing inventory, Defendant Middleton again assured investors that the Company's inventory buildup was the result of anticipated sales volume in the fourth quarter of 2022, and stated that "[w]e have the fortunate problem of a big growing backlog," and that "we're focused mainly on delivering and growing that and then you optimize." Defendants also reaffirmed the Company's recently updated 2022 guidance.

34. The above statements identified in ¶ 33 were materially false and misleading, and failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that the Company was unable to effectively manage its supply chain and product manufacturing, resulting in reduced revenues and margins, increased inventory levels, and several large deals being delayed until at least 2023, among other issues. As a result, Defendants' statements about the Company's business, operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

35. On January 25, 2023, despite Defendants' continued assurances that Plug's revenue would still grow at least 60% year over year and that the Company was addressing its supply chain issues, the Company provided a disappointing business update. Specifically, Defendants reported that the Company now expected 2022 revenue growth of just 45% to 50%

year over year—far below both its original projections of approximately 80% growth year over year and the low end of the Company's updated 60% year-over-year growth range that Defendants reaffirmed less than three months prior. In explaining the sizable revenue miss, Defendant Marsh explained that "new products came out a little slower than we hoped," as Plug's "[m]anufacturing had a few more issues than we hoped" and "added … complexity to supply chain."

36. On this news, the price of Plug common stock declined $0.97 per share, or approximately 6%, from a close of $16.34 per share on January 25, 2023, to close at $15.37 per share on January 26, 2023.

37. Just a few weeks later, after the market closed on March 1, 2023, Plug announced disappointing financial results for the fourth quarter and full year 2022, including annual revenue of $701.4 million—representing only 40% year-over-year growth and missing even the reduced guidance the Company had recently provided.

38. On this news, the price of Plug common stock declined $0.88 per share, or more than 6%, from a close of $14.21 per share on March 1, 2023, to close at $13.33 per share on March 2, 2023.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of the Company during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant

times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

40. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

    (c)    whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

    (d)    whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

    (e)    whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

    (f)    whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

    (g)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

45.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

    (a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    (b)    the omissions and misrepresentations were material;

    (c)    the Company's common stock traded in efficient markets;

(d) the Company's common stock were liquid and traded with moderate to heavy volume during the Class Period;

(e) the Company traded on the NASDAQ, and was covered by market analysts;

(f) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock;

(g) Plaintiff and members of the Class purchased and/or sold the Company's common stock between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(h) Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

46. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5  
Against All Defendants**

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. This Count is asserted against the Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50. During the Class Period, the Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51. The Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's common stock during the Class Period.

52. The Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them

privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

53.     Individual Defendants, who are a senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

54.     As a result of the foregoing, the market price of the Company's common stock was artificially inflated during the Class Period. In ignorance of the falsity of the Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's common stock during the Class Period in purchasing the Company's common stock at prices that were artificially inflated as a result of the Defendants' false and misleading statements.

55.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's common stock had been artificially and falsely inflated by the Defendants' misleading statements and by the material adverse information which the Defendants did not disclose, they would not have purchased the Company's common stock at the artificially inflated prices that they did, or at all.

56.      As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

57.     By reason of the foregoing, the Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other

members of the Class for substantial damages which they suffered in connection with their purchases of the Company's common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

58. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

60. As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

61. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were each a "controlling person[]" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's common stock.

62. The Individual Defendants, therefore, acted as controlling persons of the Company. By reason of their senior management positions of the Company, the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. The Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Awarding compensatory damages and equitable relief in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: June 12, 2023                              Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

<u>**s/ Phillip Kim**</u>
Phillip Kim, Esq.
New York State Bar Number
4145397 275 Madison Ave., 40th
Floor New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

*Counsel for Plaintiff*